**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| CHRISTOPHER G. REED,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | CAUSE NO.: 3:25-CV-702-TLS |

## OPINION AND ORDER

The Plaintiff Christopher G. Reed seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) failed to properly consider the opinion evidence and the effect of his intermittent explosive disorder on his residual functional capacity. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

## PROCEDURAL BACKGROUND

On November 21, 2019, the Plaintiff filed an application for supplemental security income, alleging disability beginning on January 1, 2008. AR 20, ECF No. 14. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on August 10, 2022. *Id.* On August 26, 2022, the ALJ issued an unfavorable decision. AR 20–31. The Plaintiff sought review of the ALJ's decision by the Appeals Council, which denied the request on November 28, 2022. AR 1. The Plaintiff filed a complaint with this Court, and a joint motion to remand under sentence four of 42 U.S.C. § 405(g) was granted on July 25, 2023. AR 582. The Appeals Council remanded the case to the ALJ on November 13,

2023. AR 584. The ALJ held a hearing on December 11, 2024. AR 496, 524–81. The ALJ issued a second unfavorable decision on April 22, 2025. AR 496–512. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On August 18, 2025, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C. § 405(g). The Plaintiff's appeal is fully briefed. ECF Nos. 20, 26, 27.

**THE ALJ'S DECISION**

For purposes of supplemental security income, a claimant is "disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 416.912.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since November 21, 2019, the current SSI application date. AR 496, 499.

At step two, the ALJ determines whether the claimant has a “severe impairment.” 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of a bipolar disorder/unspecified depression/depressive disorder/major depressive disorder; intermittent explosive disorder; unspecified learning disorder; generalized anxiety disorder/mixed anxiety; Klinefelter syndrome; and a history of an alcohol use disorder and cannabis abuse. AR 499.

Step three requires the ALJ to consider whether the claimant’s impairment(s) “meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter.” 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant’s impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id.* § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 12.04, 12.06, 12.08, and 12.11. AR 499–500.

When a claimant’s impairment(s) does not meet or equal a listing, the ALJ determines the claimant’s “residual functional capacity” (RFC), which “is an administrative assessment of what work-related activities an individual can perform despite [the individual’s] limitations.” *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can understand, remember and carry out simple instructions related to concrete and tangible tasks, he can make judgments related to simple work related decisions, he can respond appropriately to occasional interactions with coworkers and supervisors, and preferably work activity would be performed alone or in small groups. In addition, the claimant should avoid work activity requiring interactions

> with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting free from fast paced production requirements such as assembly line type work activity, and with few, if any, changes in terms of work setting, tools and processes.

AR 502.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ noted that the Plaintiff has no past relevant work. AR 510.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because he can perform significant jobs in the national economy of heavy exertion cleaner, institutional; heavy exertion farm worker; and medium exertion machine feeder. AR 511.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as

long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to adequately explain her rejection of treating and examining psychological source opinions and, relatedly, by failing to explain how she incorporated limitations in the RFC based on the Plaintiff's severe impairment of intermittent explosive disorder. The Court finds that remand is required for the ALJ to explain how the RFC

accounts for the Plaintiff's random, uncontrollable anger outbursts that are a symptom of the Plaintiff's intermittent explosive disorder.

The ALJ found the Plaintiff's intermittent explosive disorder to be a severe impairment at step two of the sequential analysis. AR 499. In the context of the RFC analysis, the ALJ recognized numerous diagnoses of intermittent explosive disorder. The ALJ considered the February 19, 2020 opinion of Dr. Nordstrom, who conducted a psychological consultative exam and gave a medical source statement. AR 504–05 (citing Ex. D3F (AR 380–85)). Dr. Nordstrom found that the Plaintiff "presents episodic times of explosive anger resulting in damage to property but not physical aggression. [The Plaintiff] has a history of Klinefelter syndrome and angry outbursts can be part of the diagnostic profile of that disorder." AR 382. On remand from this Court, the ALJ also considered the new evidence of the October 6, 2022 medical source statement of the Plaintiff's treating nurse practitioner, Mr. Cupp, AR 508–09 (citing Ex. D12F (AR 869–72)), and the March 6, 2025 opinion of Dr. Garcia, who completed a consultative psychological evaluation and provided a medical source statement at the ALJ's request following the hearing, AR 507–08 (citing Ex. D16F (AR 987–93)). Both Mr. Cupp and Dr. Garcia also listed intermittent explosive disorder as a diagnosis. AR 870, 990.

In her RFC discussion, the ALJ recognized the Plaintiff's testimony that he continues to have angry outbursts resulting in property damage; he continues to have feelings of anger up to three times a week; and he expresses his anger by looking like he is crazy, breaking things, including breaking a lot of doors, and getting into physical fights with people. AR 503. The ALJ discredited the Plaintiff's testimony regarding physical fights with people because of his prior reports in the medical record denying such fights. The ALJ recognized the Plaintiff's testimony that "he could not work with people and could not follow the rules, and he denied holding any

job for more than one year due to anger and that every job ended in his quitting or getting fired, but mostly getting fired because he got angry and would blow up." AR 503–04. The ALJ appears to discredit the reason he got fired because there is no documentation stating why his work ended, AR 504, but it is unclear to the Court that there would be any such records. The ALJ also discussed many of the treatment records and the opinion evidence. AR 504–09.

Despite acknowledging the Plaintiff's diagnosis of intermittent explosive disorder and the medical records reporting the outbursts, the ALJ does not explain how she accounted for the Plaintiff's explosive episodes in the RFC. "The 'mere recitation of evidence does not substitute for meaningful analysis of evidence.'" *Cox v. Saul*, No. 2:18-CV-355, 2019 WL 7605812, at *8 (N.D. Ind. Aug. 15, 2019) (quoting *Murphy v. Berryhill*, No. 1:18-CV-118, 2019 WL 1123511, at *16 (N.D. Ind. Mar. 11, 2019) (citing *Young v. Sec'y of Health Hum. Servs.*, 957 F.2d 386, 393 (7th Cir. 1992))); *see also Karen A.R. v. Saul*, No. 1:18-CV-2024, 2019 WL 3369283, at *7 (S.D. Ind. Jul. 26, 2019) ("To be sure, the ALJ does go on to outline, over a few paragraphs, Karen's treatment related to fibromyalgia, but that outline is limited to a mere recitation of the medical evidence.").

Notably, the ALJ found Dr. Nordstrom's 2020 opinion generally persuasive, discussing several aspects of his medical source statement. AR 504–05. Yet the ALJ did not address Dr. Nordstrom's finding that the Plaintiff has episodic times of explosive anger resulting in damage to property. *Id.* Thus it appears the ALJ found this part of the opinion persuasive. And although the ALJ questioned the Plaintiff's testimony regarding getting into physical fights with people and the reason for his terminations, the ALJ did not question his testimony regarding his explosive episodes. The Commissioner is correct that the ALJ is not required to find that the Plaintiff has disruptive anger episodes that preclude work simply because he is diagnosed with

intermittent explosive disorder. *McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("[T]he need for restrictions cannot be inferred from the diagnosis alone."). But here, the evidence of record supports a history of disruptive anger episodes related to his intermittent explosive disorder, and the ALJ does not explain how the RFC accommodates those angry outbursts. The ALJ has not built a logical bridge between the evidence of the Plaintiff's explosive episodes and the RFC.

The ALJ's treatment of the opinion evidence, considering the failure to discuss the Plaintiff's explosive episodes, also requires remand. An ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 416.920c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 416.920c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 416.920c(a), (b)(2). Therefore, the ALJ must explain how those two factors were considered in making the disability decision. *Id*. § 416.920c(b)(2). Importantly, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Mr. Cupp, the Plaintiff's treating nurse practitioner, provided the October 6, 2022 medical source statement on remand, AR 869–72, and opined that the Plaintiff would need daily breaks of fifteen minutes, would not be able to complete a normal workday and workweek without interruptions from psychologically based symptoms, would be expected to miss work twelve or more days a month, and may arrive late or leave early "potentially every day." AR 870. Mr. Cupp also opined that the Plaintiff could only occasionally (up to one-third of the workday) work in coordination with or proximity to others without being unduly distracted, ask simple questions or request assistance if needed, interact appropriately with the general public or with coworkers without exhibiting behavioral extremes, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, and deal with normal work stress. AR 871. The ALJ acknowledged that Mr. Cupp's opinion was disabling as it indicated an inability to perform basic work requirements. AR 562–63. However, the ALJ found the opinion "that the claimant has occasional limitations in social functioning" internally inconsistent with Mr. Cupp's own examination findings that did not support this degree of disruption and inconsistent with the overall evidence that "generally shows intact functioning with only medication management over several years." AR 509. But in considering this opinion, the ALJ did not discuss the Plaintiff's angry outbursts.

To clarify the record, the ALJ ordered the consultative examination and mental status examination conducted by Dr. Garcia on March 6, 2025. AR 507. Dr. Garcia diagnosed intermittent explosive disorder. AR 990. Dr. Garcia also completed a medical source statement that outlined specific mental limitations. AR 991–93. She found "mild" to "moderate" issues with understanding, remembering, and carrying out instructions, AR 991, but "marked" limitations in the categories of interacting appropriately with the public, supervisors, and

coworkers and responding appropriately to usual work situations and to changes in a routine work setting. AR 992. Dr. Garcia explained that the Plaintiff's interview indicated that he had a "very low frustration tolerance" and a history of "difficulty following instructions from authority or coworkers" as he often responded with "aggressive and violent anger outburst[s]" and had "difficulty regulating his emotions and managing his anger" since childhood. *Id*. The Plaintiff notes that a finding of "recurrent, impulsive, aggressive behavioral outbursts" and a marked limitation in two categories would require a finding of disability at step three of Listing 12.08 for intermittent explosive disorder. *See* 20 CFR Part 404, Subpart P, App'x 1, §§ 12.00(B)(7)(b), 12.00(E)(4), 12.08.

The Seventh Circuit has remarked that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation here for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)). Here, the ALJ found Dr. Garcia's opinion of marked limitations in the areas of social functioning "not supported" for lack of "any specific clinical exam findings" and being based on the Plaintiff's subjective reports. AR 508. However, as argued by the Plaintiff, a psychologist does not merely transcribe a claimant's subjective report but filters it "through the psychologist's training and judgment." *Thompson v. Berryhill*, 722 F. App'x 573, 581 (7th Cir. 2018) (citing *Price v. Colvin*, 794 F.3d 836, 839–40 (7th Cir. 2015) (psychiatrist); *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (psychologist)). The Social Security Administration likewise

acknowledges that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 416.920c(c)(3)(v). While the ALJ found Dr. Garcia's opinion of the two "marked" limitations inconsistent with the overall evidence, AR 508, the ALJ did not discuss the records of the Plaintiff's angry outbursts in this context.

Finally, other ambiguities in the ALJ's discussion of the opinions of the state agency reviewing psychologists Dr. Lovko and Dr. Unversaw draw into question the ALJ's failure to discuss the Plaintiff's angry outbursts in the RFC analysis. AR 509 (citing Exs. D2A, D4A (AR 120, 137)). The psychologists opined that the Plaintiff can understand, carry out, and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to *brief supervision and interactions with coworkers and work situations*; and deal with changes in a routine work setting. AR 120, 137. They further opined that the Plaintiff would be able to manage occasional contact with the public but that sustained, intensive, interpersonal contact would be precluded; that the Plaintiff would appear to work best alone, in *semi-isolation* from others or as part of a small group; and that the totality of the medical evidence of record suggest the Plaintiff seems to be able to maintain at least a minimal level of relationship with others. AR 120, 137.

At the hearing, the ALJ discussed their use of the term "brief supervision" and noted the term was "not defined in the DOT or its companion publications" and that she "struggled with the understanding of what that means." AR 555. The ALJ asked the vocational expert to define "brief," to which the VE replied, "Brief is short and to the point and so, that would—be just receiving brief instructions, directions or communicating and change—that is going to be very basic, simple, short. If there is an issue with performance for example, I would not consider that

brief." AR 558. The ALJ also asked the vocational expert how she would define "semi-isolation," also used by the state agency physicians, and the vocational expert said that this meant that there would be "fairly infrequent" exposure to others that did not require more than "incidental" contact. AR 562. Finally, the ALJ and counsel discussed an apparent ambiguity in the wording of the state agency psychologists' opinions suggesting that the Plaintiff would be limited to the ability to "only briefly interact with a work situation." AR 564. The ALJ asked the vocational expert if this would essentially be a work-preclusive problem with being off task in excess of employer tolerances; the vocational expert agreed. AR 563–64. The ALJ stated at the hearing that she was "still not sure what . . . work situations means in this context." AR 564. These ambiguities raise additional questions about the RFC and whether the ALJ accounted for the Plaintiff's angry outbursts.

Despite finding intermittent explosive disorder to be a severe impairment, the ALJ failed to include any limitations related to unpredictable, uncontrollable episodes of anger outbursts as described by the Plaintiff and as reported as occurring by examining and treating sources and did not explain how those episodes were factored into the RFC. For these reasons, remand is required for further proceedings.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 20] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on September 18, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT